NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

J3 HARMON, LLC, *Plaintiff/Appellee,*

*v.*

JILL RHODE, *Defendant/Appellant.*

No. 1 CA-CV 25-0706
FILED 07-02-2026

Appeal from the Superior Court in Maricopa County
No. CV2014-003727
The Honorable Jason Easterday, Judge *Pro Tempore*

**VACATED**

COUNSEL

Sanford J. Germaine PC, Phoenix
By Sanford J. Germaine
*Counsel for Plaintiff/Appellee*

Bewley, Lassleben & Miller LLP, Whittier, CA
By Leighton M. Anderson (Pro Hac Vice)
*Co-Counsel for Defendant/Appellant*

Clear Counsel Law Group, Mesa
By Dustin E. Birch
*Co-Counsel for Defendant/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge David B. Gass[1] delivered the decision of the court, in which Judge Anni Hill Foster and Judge D. Andrew Gaona joined.

---

**G A S S**, Judge:

**¶1**        Jill Rhode appeals the superior court's order denying her motion to vacate J3 Harmon, LLC's default judgment against her based on invalid service by publication. Because J3 Harmon did not make reasonably diligent efforts to locate Jill before serving her by publication, the court vacates the superior court's default judgment as void for lack of jurisdiction.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        The court views the facts in the light most favorable to upholding the superior court's ruling on a motion to set aside a default judgment. *Ezell v. Quon*, 224 Ariz. 532, 534 ¶ 2 (App. 2010). And the court defers to the superior court's factual findings unless clearly erroneous. *Ruffino v. Lokosky*, 245 Ariz. 165, 168 ¶ 9 (App. 2018).

**¶3**        In 2012, John Rhode, Jill's then husband, operated Rhode CrossFit. That year, CrossFit leased a fitness studio from J3 Harmon. Though J3 Harmon's lease was with CrossFit, John and Jill (who were married at the time) both signed a limited personal guarantee. Under the lease terms, rent was due on the first day of each month.

**¶4**        When CrossFit stopped paying rent, J3 Harmon repossessed the studio. In 2014, J3 Harmon filed a complaint for payment of $33,196.63

---

[1] Judge David B. Gass was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2026. In accordance with the authority granted by Article VI, Section 3, of the Arizona Constitution, and under A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge David B. Gass as a judge pro tempore in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2026-87.

under the lease, naming CrossFit, John, and Jill.[2] For John and Jill, Harmon filed an affidavit showing the process server attempted service at 3 addresses, checking the box saying the process server asked about "the last known residence of defendants" and "other." The explanation following the "other" box said:

> 6/12/14@12:09pm 1610 N. Rosemont, Ste.11, Mesa, 85205-3343 The office located at this address is empty at this time and there is no forwarding information available. I called the client and updated. Per client, hold service. 6/23/14@6:10pm 10611 E. Portobello Avenue, . Mesa, 85212 I spoke to the current occupant. They said their name was Combs and that they have lived at this address for 2 months. They said John Rhode does not live here and they do not know him. They have gotten mail for him though. I called the client and updated. Per client, hold service. 7/15/14@6:10 pm 10521 E. Plata Avenue, Mesa, 85212 The house located at this address is vacant. I called the client and updated. Per client, RTA docs.

¶5        J3 Harmon served Jill by publication with the above and filed an affidavit of propriety and completion of service by publication. That affidavit offered no new information, simply referencing the process server's affidavit. After Jill did not answer, J3 Harmon sought default judgment against her under the personal guarantee. The superior court entered that default judgment.

¶6        In 2024—10 years later—J3 Harmon renewed the judgment and began garnishing Jill's wages. At that point, Jill moved to vacate for lack of personal jurisdiction. The superior court held oral argument, and found Jill failed to prove J3 Harmon's service was improper. It then denied her motion to vacate the default judgment.

¶7        The court has jurisdiction over Jill's timely appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and -2101.A.1.

**DISCUSSION**

¶8        Jill argues the superior court should have granted her motion to vacate a default judgment based on defective service by publication. Because the record shows J3 Harmon did not determine Jill's address at the

---

[2] CrossFit and John are not parties to this appeal.

time of service and J3 Harmon did not file an answering brief, Jill raises a debatable issue about whether service by publication was improper.

¶9 When a debatable issue exists, the court may treat the failure to file an answering brief as a confession of error. *See Savord v. Morton*, 235 Ariz. 256, 259 ¶ 9 (App. 2014). But if the record clearly resolves an issue, there is no debatable question. *See Air E., Inc. v. Wheatley*, 14 Ariz. App. 290, 294 (1971).

¶10 The Arizona Supreme Court characterized a debatable question as one requiring "much industry and independent research to refute." *Merrill v. Wheeler*, 17 Ariz. 348, 350 (1915). It must spark "at least grave doubt" in the superior court's order. *Adkins v. Adkins*, 39 Ariz. 530, 532 (1932). And any questions asked must raise a novel legal issue. *See Childs v. Frederickson,* 21 Ariz. 248, 249 (1920). Here, J3 Harmon has shown no reasonable excuse for failing to file an answering brief. And as explained below, Jill's appeal raises a debatable question.

¶11 Jill argues J3 Harmon did not make reasonably diligent efforts to locate Jill's address, making service of publication improper. The court agrees. Because the record clearly resolves the issue, the court resolves on that issue alone.

¶12 The court generally reviews the denial of a Rule 60(b)(4) motion for abuse of discretion. *Ruffino*, 245 Ariz. at 168 ¶ 9. But the court applies a *de novo* standard of review when deciding whether service was proper because it presents a legal question. *See id.*; *see also Springfield Credit Union v. Johnson*, 123 Ariz. 319, 323 n.5 (1979) ("If an Arizona judgment is void for lack of jurisdiction, the court has no discretion, but must vacate the judgment.").

¶13 Under Rule 60, the superior court must set aside a void judgment. Ariz. R. Civ. P. 60(b)(4). "[A] judgment is void if it was entered without jurisdiction because of a lack of proper service." *Ruffino*, 245 Ariz. at 168 ¶ 10; *see also Koven v. Saberdyne Sys., Inc.*, 128 Ariz. 318, 321 (App. 1980) ("[A] judgment would be void and subject to attack if the court that rendered it was without jurisdiction because of lack of proper service."). When serving by publication, the serving party must comply with Rule 4.1(*l* ), Arizona Rules of Civil Procedure.

¶14          Under Rule 4.1(*l* )(1)(A),[3] a plaintiff may serve a party by publication if "the serving party, despite reasonably diligent efforts, has been unable to determine the person's current address; or the person to be served has intentionally avoided service of process." The plaintiff further must show "service by publication is the best means practicable in the circumstances for providing the person with notice of the action's commencement." Rule 4.1(*l* )(1)(B).

¶15          The plaintiff must support service by publication with an "affidavit that sets forth the serving party's reasonably diligent efforts to serve the person." Rule 4.1(*l* )(1)(C). The affidavit must identify "the manner and dates of the publication and mailing, and the circumstances warranting service by publication. If no mailing was made because the serving party did not know the current address of the person being served, the affidavit must state that fact." Rule 4.1(*l*)(4)(A); *Ruffino*, 245 Ariz. at 168 ¶ 11. And the affidavit cannot rely on conclusory statements but must include "facts indicating [the party] made a due diligent effort to locate an opposing party." *Sprang v. Petersen Lumber, Inc.*, 165 Ariz. 257, 261 (App. 1990).

¶16          The superior court must find due diligence before it can acquire jurisdiction following service by publication. *Preston v. Denkins*, 94 Ariz. 214, 222 (1963). "[I]f the affidavit fails to indicate that due diligence was exercised to locate the defendant, the default judgment is void on its face for lack of jurisdiction." *Sprang*, 165 Ariz. at 262 (citation omitted). "A 'due diligent effort' requires such pointed measures as an examination of telephone company records, utility company records, and records maintained by the county treasurer, county recorder, or similar record keepers." *Id.* at 261. *Ruffino* further established a reasonably diligent effort includes attempting contact by "telephone, email, or even social media to verify [a] correct address." 245 Ariz. at 168 ¶ 14.

¶17          Jill raises a debatable question because J3 Harmon's affidavit did not show reasonably diligent efforts to determine Jill's address, and it does not identify "the circumstances warranting service by publication."

---

[3] Rule 4.1 was amended in 2021 to allow service by publication "if a party shows that service provided by Rule 4.1(c) through 4.1(k) . . . is impracticable" and removing the limit "only if the last known address of the person to be served is within Arizona. . . . " Ariz. Civ. R. P. 4.1(*l*) (2017), *amended by*, Ariz. Civ. R. P. 4.1 (2021). Because the 2021 change does not affect the due diligence a party must undertake before serving a party by publication under *Ruffino*, that change does not affect the outcome here.

True, the affidavit shows the process server attempted service at several addresses. But beyond that, the affidavit shows the process server merely confirmed the then residents at 1 address did not know John or where he lived. The affidavit does not even say the process server asked about Jill. Though the process server checked boxes on the affidavit saying the process server asked about "the last known residence of defendants" and "other[s]," the affidavit offers no other explanation beyond that noted in paragraph 4 above.

¶18 Whether that was enough is debatable. *See id.* The affidavit does not show J3 Harmon made any efforts beyond those shown. In fact, the process server did not check the boxes "searched local telephone directories and information service," "inquired of the U.S. Post Office concerning forwarding address," or "inquired of neighbors at last known residence." The only 2 checked boxes were "inquired of last known address" and "other" followed by the text quoted in paragraph 4 above.

¶19 At bottom, J3 Harmon's lack of knowledge of Jill's residence arguably was not enough for publication service. *See Preston*, 94 Ariz. at 222 (stating a serving party must show the jurisdictional fact that residence is unknown, not merely allege plaintiff does not know the residence). Because J3 Harmon arguably did not use reasonably diligent efforts to locate Jill, the superior court should have granted Jill's motion and vacated the default judgment. *See Ruffino*, 245 Ariz. at 168 ¶ 12 (serving a publication requires a plaintiff to show it could not determine the defendant's current address at the time of service or the defendant was intentionally avoiding service). The court thus vacates the default judgment as void for lack of proper service.

## ATTORNEY FEES AND COSTS

¶20 Jill seeks attorney fees under A.R.S. § 12-341.01.A because this dispute arises out of a contract. Because Jill is the successful party, the court grants her request for reasonable attorney fees and costs incurred on appeal upon her compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

¶21        The court vacates the default judgment.

